# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL NO. 5:13CV171-FDW-DSC

FOREST MITCHELL, )
     Plaintiff, )
        )
   vs. )  **MEMORANDUM AND RECOMMENDATION**
        )
CAROLYN W. COLVIN, )
Commissioner of Social )
Security Administration, )
     Defendant. )
_____)

  **THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #10) and "Brief in Support ..." (document #11), both filed May 7, 2014, and Defendant's "Motion for Summary Judgment" (document #12) and "Memorandum in Support ..." (document #12-1), both filed July 18, 2014.   This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

  Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

---

[1]Pursuant to the Text-Only Social Security Scheduling Order entered on March 20, 2014, this matter is ripe upon the filing of Defendant's Motion and Memorandum.  Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

# I. <u>PROCEDURAL HISTORY</u>

The procedural history is not in dispute. In November 2003, Plaintiff filed an application for a period of disability and Social Security Disability Insurance Benefits ("DIB"). The application was denied by an Administrative Law Judge ("ALJ") on September 26, 2006, and Plaintiff did not appeal the Appeals Council's denial of his Request for Review.

Plaintiff filed a second application in December 2007. This application was denied by the Commissioner and Plaintiff appealed to the United States District Court for the Western District of North Carolina. <u>See</u> <u>Mitchell v. Astrue</u>, 5:08cv70-RLV-CH. On March 6, 2009, the Court <u>granted</u> the parties' Consent Motion to Remand. <u>Id.</u>, Document #15. On rehearing, the ALJ was instructed to:

> (1) reevaluate the evidence in the record, including the new evidence submitted with the request for Appeals Council review, to determine if Plaintiff's alleged impairments of substance abuse disorder, encephalopathy, and depression are severe impairments; (2) reevaluate the state agency physician's mental residual functional capacity assessment to determine whether Plaintiff's alleged substance abuse disorder, encephalopathy, and depression cause nonexertional limitations; and, (3) obtain evidence from a vocational expert to determine the extent to which Plaintiff's nonexertional limitations, including those experienced as side effects of Plaintiff's medication, erode the occupational base for light work and to determine whether Plaintiff can perform other work that exists in significant numbers in the national or regional economy.

<u>Id.</u>

On April 6, 2011, the ALJ issued a decision again denying Plaintiff's claim. On July 17, 2012, the Appeals Council remanded the case with instructions to give further consideration to Plaintiff's Residual Functional Capacity ("RFC")[2] and the opinions of Plaintiff's treating

---

[2]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of

physician, Dr. Robert Reindollar. (Tr. 674).

Another hearing was held on October 24, 2012. On November 30, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 10-21). The ALJ found that Plaintiff had not engaged in substantial gainful activity between his alleged onset date of March 15, 2003, and his date last insured on September 30, 2006. (Tr. 460). The ALJ also found that Plaintiff suffered from alcoholism, hepatitis C infection with encephalopathy, cirrhosis of the liver, and degenerative disc disease, which were severe impairments within the meaning of the regulations (Tr. 461), but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 462). The ALJ then found that Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b),[3] with limitations of a sit/stand option that allowed occasional changes of position; no more than occasional stooping, kneeling, and squatting; and performance of simple, routine, repetitive tasks involving only one or two step instructions. (Tr. 464).

Based upon this RFC and the testimony from a Vocational Expert (V.E.), the ALJ found that Plaintiff could not perform his past relevant work, but that there were a significant number of jobs in the regional and national economy that he could perform (Tr. 471-473). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 473).

_____

[the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff's Request for Review by the Appeals Council was denied.

Plaintiff filed the present action on December 20, 2013. He assigns error to the ALJ's assessment of his RFC, including his evaluation of Dr. Reindollar's opinions, and the ALJ's assessment of his credibility and subjective complaints. See Plaintiff's "Brief in Support ..." at 4-19 (document #11). The parties' cross-Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III.  DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became disabled[4] as that term of art is defined for Social Security purposes at any time prior his date last insured on September 30, 2006.[5]  It is not enough for a claimant to show that he suffered from severe medical conditions or impairments which later became disabling.  The subject medical conditions must have become disabling prior to the date last insured.  Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971) (no "manifest error in the record of the prior administrative proceedings" where Plaintiff's conditions

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

[5]Based upon his earnings record, Plaintiff must show that he was disabled on or before September 30, 2006, the date he last met the DIB insured status requirement.

did not become disabling until after the expiration of his insured status).

Plaintiff argues that the ALJ erred in assessing his RFC. The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p at *2. However, it is the claimant's burden to establish his RFC by demonstrating how those impairments impact his functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). The ALJ's RFC determination here is supported by substantial evidence including Plaintiff's testimony, medical records and treatment history.

Plaintiff argues that the ALJ failed to give adequate weight to Dr. Reindollar's opinions. The Fourth Circuit has held that a treating physician's opinion need not be accorded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of an alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2)

(2002); and <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." <u>Mastro</u>, 270 F.3d. at 178 (citing <u>Craig v. Chater</u>, 76 F.3d 585, 590 (4th Cir. 1996)).

The ALJ considered evidence from Dr. Reindollar who treated Plaintiff during and after the period at issue, and submitted several letters in support of his disability claim. (Tr. 467-470). Dr. Reindollar wrote a letter dated May 1, 2006, stating that he was treating Plaintiff for chronic liver disease with cirrhosis, and that Plaintiff was disabled and unable to engage in gainful employment. (Tr. 326). Dr. Reindollar wrote another letter with similar content dated November 3, 2006, adding that Plaintiff suffered from moderate episodes of memory loss, slurred speech, depression, and somnolence, and that at times he might forget his spouse's name or where he lives. Dr. Reindollar described these as common symptoms of patients with hepatic encephalopathy (Tr. 390). Dr. Reindollar noted that this condition could be controlled by medication, but that Plaintiff did not have prescription coverage at that time and could not afford it. (Tr. 390). On July 10, 2007, Dr. Reindollar wrote that Plaintiff was disabled, adding this time that Plaintiff had been in and out of the hospital with ascites and hepatic encephalopathy over the past few years, and suffered from depression, memory loss, somnolence, and agitation. (Tr. 391). He also noted that Plaintiff continued to consume alcohol and had been in numerous drug treatment programs. (Tr. 391).

Dr. Reindollar also wrote two letters dated April 4 and April 18, 2008, stating that Plaintiff was being treated for end-stage liver disease, resulting in hepatic encephalopathy. (Tr.

374, 375).  Dr. Reindollar stated that this condition caused ascites, confusion, and disorientation, which could make it unsafe for Plaintiff to work around dangerous machinery. (Tr. 374, 375). Dr. Reindollar further noted that the medication used to treat this condition produced side effects of loose stools and urgency of urination, which required Plaintiff to use the restroom up to ten to twelve times within an eight-hour period. (Tr. 375).  The most recent letter from Dr. Reindollar was dated July 3, 2012, with similar content to previous letters, but also noting that Plaintiff recently experienced abdominal ascites, resulting in fluid build- up that causes an increase in abdominal girth and shortness of breath. A paracentesis was performed to remove this fluid. (Tr. 777).

On January 22, 2011, more than four years after Plaintiff's eligibility for benefits had expired, Dr. Reindollar completed a medical source statement listing diagnoses of hepatic encephalopathy, alcoholic cirrhosis, and cholecystitis, with symptoms of confusion, fatigue, and back pain (Tr. 621).  Dr. Reindollar noted that he was not treating Plaintiff's back pain. (Tr. 621).  Dr. Reindollar checked a box indicating that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations, and that his pain would "often" be severe enough to interfere with attention and concentration (Tr. 622).  He opined that Plaintiff's ability to deal with work related stress would be moderately limited (Tr. 622).  Dr. Reindollar explained that the medication used to treat hepatic encephalopathy caused severe diarrhea (Tr. 622).  He opined that Plaintiff could sit for a total of one hour per eight- hour workday, but only for up to fifteen minutes at a time before needing to alternate positions or walk about for fifteen minutes. He could stand or walk for a total of less than an hour in an eight-hour workday, but only for

about for fifteen minutes at a time before needing to return to a seated position or lying down for an hour. (Tr. 622-624). Dr. Reindollar added that Plaintiff would need an hour rest period in addition to a morning break, lunch break, and afternoon break scheduled at two hour intervals (Tr. 624). He opined that Plaintiff could never lift or carry any weight, balance, stoop, or move his neck, and could only occasionally reach, handle, or finger bilaterally. (Tr. 627). Finally, he estimated that Plaintiff would likely be absent from work more than three times per month as a result of his impairments. (Tr. 627). Dr. Reindollar indicated that these restrictions had applied since at least March 15, 2003. (Tr. 627).

The ALJ gave significant weight to evidence from Dr. Reindollar for purposes of establishing cirrhosis and hepatitis with encephalopathy as "severe" impairments. (Tr. 468). The ALJ gave little weight to Dr. Reindollar's letters regarding Plaintiff's disability[6] and his medical source statement, finding that they were inconsistent with other evidence in the record, including the doctor's own treatment notes. (Tr. 468). The ALJ noted that Dr. Reindollar's treatment notes showed reports of fatigue and malaise, but did not contain complaints of persistent memory problems or a need to use the rest room multiple times during the day. (Tr. 468). The ALJ also found that the functional limitations identified in the January 2011 letter were clearly unsupported, noting that a total inability to stoop, flex or rotate his neck were inconsistent with Plaintiff's activities, which included leaf blowing, washing clothes, and carrying laundry baskets. (Tr. 468; see Tr. 837, 840). The ALJ further found that limitations of sitting for only fifteen

---

[6]The ALJ also stated that the letters were statements concerning issues reserved to the Commissioner, and as such could not be accorded controlling weight or special significance (Tr. 469) (citing 20 C.F.R. 404.1527(d)(2)). In a brief before the agency, Plaintiff's counsel previously agreed that Dr. Reindollar's letters would be entitled to little weight because they were "basically conclusory statements that a claimant is permanently disabled." (Tr. 629).

minutes at a time and for one hour per day were also inconsistent with Plaintiff's activities, such as riding in a car with his father. The limitations to standing or walking for only fifteen minutes at a time were inconsistent with Plaintiff's statements that he walked for exercise, including his June 2012 report that he was walking for an hour or two a day. (Tr. 469) (citing Tr. 686).

The ALJ also noted that Dr. Reindollar did not perform functional tests or refer Plaintiff for a functional capacity examination, and that clinical findings, such as increased girth in his abdomen, did not support his medical source statement. (Tr. 469). The ALJ then considered treatment notes from 2003 up to Plaintiff's date last insured, as well as treatment notes subsequent to his date last insured, and explained how they were inconsistent with Dr. Reindollar's medical source statement. (see Tr. 469-470) (citing Tr. 215-275, 304-340, 534-620, 686-744, 771-777).

The ALJ instead gave greater weight to the opinions provided by the State agency medical consultants, Doctors David Buchin and Alan Cohen. (Tr. 471). On January 8, 2004, Dr. Buchin found that Plaintiff could sit, stand, or walk for about six hours in a work day; push, pull, lift, and carry twenty pounds occasionally and ten pounds frequently; had no postural limitations apart from a restriction to occasional climbing; no manipulative limitations, and no environmental limitations apart from a need to avoid concentrated exposure to hazards. (Tr. 296-303). On June 17, 2004, Dr. Cohen concurred with that assessment. (Tr. 277). The ALJ agreed, noting that Plaintiff's impairments, along with associated fatigue and malaise, limited him to light work. (Tr. 471). The ALJ found that additional evidence had been received since those opinions were rendered, and added a sit/stand option and postural limitations to accommodate

Plaintiff's occasional back pain. (Tr. 471). Finally, the ALJ stated that he had not imposed a specific limitation on hazards, and that none of the jobs the V.E. cited required any exposure to hazards. (Tr. 471).

In assessing Plaintiff's mental functioning, the ALJ gave substantial weight to the findings of the State agency psychological consultants, Doctors William Oliver Mann and Ben Williams. (Tr. 471). On January 21, 2004, Dr. Mann concluded that Plaintiff could adequately perform simple, routine, repetitive tasks in a low-stress environment, dependent upon his sobriety. (Tr. 278-295). On June 24, 2004, Dr. Williams agreed with that assessment. (Tr. 276). The ALJ relied on those assessments, and found that they were consistent with the opinion from consultative examiner Dr. Alexander Riddle. (see Tr. 164-171). The ALJ explained that he had not imposed a specific restriction for low-stress work in view of Plaintiff's ability to remain sober for extended periods. (Tr. 471).

Plaintiff argues that the ALJ did not adequately consider the factors for evaluating a treating physician's opinion, and the degree to which they influenced his decision. The regulations do not require the ALJ to discuss every factor in 20 C.F.R. § 404.1527(c)(2). Clontz v. Astrue, No. 2:12-cv-00013-FDW, 2013 WL 3899507, at *7 (W.D.N.C. July 29, 2013). Rather, the "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The ALJ provided adequate reasons for his decision to afford less weight to Dr.

Reindollar's opinions. Those reasons are supported by substantial evidence.

The ALJ found the State agency medical consultants' opinions to be consistent with the record as a whole (Tr. 470). See Smith v. Schweiker, 795 F.2d 343, 345-346 (4th Cir. 1986) (an opinion from a non-examining physician may constitute substantial evidence in support of an ALJ's decision "in the face of the opinions of treating and examining physicians" so long as the opinion from the non-examining physician is consistent with the record as a whole); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) ("the testimony of a nonexamining physician can be relied upon when it is consistent with the record"); see also 20 C.F.R. § 404.1527(e)(2)(i) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified … [and] are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider [their] findings and opinions as opinion evidence"); SSR 96-6p ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Plaintiff argues that Dr. Williams was "too quick to pull the trigger" in denying his claim, relying on a medical note dated March 22, 2004, indicating that Plaintiff's Hepatitis C was in remission. A week later, Plaintiff received a letter indicating it had relapsed. Document #11 at 10-11 (citing Tr. 216, 217). Plaintiff stresses that his resulting encephalopathy could remain active even if his hepatitis C is in remission. This does not undermine Dr. Williams' opinion, as Plaintiff acknowledges that his hepatitis C was in remission in 2005 and noted to be in sustained

remission in July 2010. Id. at 6, n.1, 15. Moreover, Plaintiff has provided no evidence indicating persistent relapse, and, to the contrary, subsequent evidence demonstrates sustained remission.

It also bears noting that in its most recent order dated July 17, 2012, the Appeals Council remanded for the sole purpose of evaluating Dr. Reindollar's 2011 medical source statement. There was no mention of further evaluation of Plaintiff's mental impairments or a need for updated medical evidence. (Tr. 4).

Plaintiff emphasizes that on the initial remand, the ALJ was directed to evaluate his encephalopathy, which was previously found not to be severe at step two of the sequential evaluation process. Plaintiff speculates that although the ALJ subsequently found this to be a severe condition, the ALJ "seems to have assumed that because [Plaintiff's] hepatitis C was in remission, his encephalopathy was not disabling." (Document #11 at 12). The ALJ never assumed that Plaintiff's encephalopathy was not disabling because his hepatitis C was in remission. The ALJ noted that the condition was in remission during his evaluation of Plaintiff's credibility and the medical evidence. (Tr. 465). This was only a part of the ALJ's evaluation of Plaintiff's impairments. The ALJ determined that Plaintiff's encephalopathy was not disabling by evaluating the opinion evidence in the context of the record as a whole, and based his RFC determination on the opinions he found best supported by the record. (Tr. 468-471).

Plaintiff also argues that the ALJ's assessment of his credibility is not supported by substantial evidence. The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence

showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (citing 20 C.F.R. § 416.929(b); and § 404.1529(b)); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The ALJ is not required to discuss every factor enumerated in 20 C.F.R. §§ 404.1529(c) and 416.929(c). Rather, the decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The record contains evidence of Plaintiff's alcoholism, hepatitis C infection with encephalopathy, cirrhosis of the liver, and degenerative disc disease – which could be expected to produce some of the symptoms he claimed. Accordingly, the ALJ found that Plaintiff met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not

fully credible, as they were not consistent with the objective evidence in the record. That determination is supported by substantial evidence.

The ALJ assessed Plaintiff's credibility according to the provisions of 20 C.F.R. § 404.1529 and SSR 96-7p, finding that his testimony was credible to the extent that he could no longer perform the heavy lifting and strenuous activity required by his past work. (Tr. 465). In explaining why Plaintiff's allegations were not fully credible, the ALJ stated that medical records showed that his condition was stable as long as he remained sober. (Tr. 465). The ALJ noted that Plaintiff told Dr. Riddle that he was disabled primarily due to his hepatitis C, tired easily and did not have much energy. He also told Dr. Riddle that he often drank a case of beer per day. (Tr. 465) (citing Tr. 164-171). The ALJ also noted that Dr. Reindollar repeatedly found Plaintiff's hepatitis was in remission and his cirrhosis was stable, with no peripheral edema or joint swelling. (Tr. 465) (citing Tr. 326-340). The ALJ noted that Plaintiff had back surgery in 1999 (Tr. 817-818), but returned to work following the surgery, and worked from 1999 to 2003 in a job that required him to be on his feet all day and lift fifty to sixty pounds. (Tr. 466; Tr. 842). The ALJ found that Plaintiff's testimony concerning his memory problems was inconsistent with the medical evidence. (Tr. 466) (citing Tr. 164-171, 172-180, 215-275, 304-340). The ALJ considered evidence from Dr. Reindollar up to and beyond 2006, including notations that Plaintiff's memory was normal from 2006 through at least 2011. (Tr. 469-470; see Tr. 218, 220, 223, 224, 228, 231, 233, 235, 237, 240, 243, 307, 309, 310, 328, 332, 333, 334, 337, 536, 541, 545, 548, 553, 558, 596, 601, 604, 610, 690, 695, 699, 704, 708, 713, 717, 720). Finally, the ALJ specifically addressed Plaintiff's allegation that he had to use the

bathroom ten to twelve times in an eight-hour day and found it to be unsubstantiated. (Tr. 468).

Plaintiff assigns error to the ALJ's failure to discuss his wife's testimony. (Tr. 436-445). Plaintiff's wife essentially corroborated his testimony. This Court has rejected the argument that an ALJ's failure to specifically address lay witness testimony requires remand. See Grubby v. Astrue, No. 1:09-cv-364, 2010 WL 5553677, at * 6-8 (W.D.N.C. Nov. 18, 2010) ("As long as substantial evidence supports the ALJ's conclusion and the ALJ explains why 'significant probative evidence has been rejected,' an ALJ's failure to discuss lay witness testimony constitutes harmless error.") (quoting Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (holding that although the ALJ did not discuss the plaintiff's son's testimony in his hearing decision, reversal was not required because medical evidence supported the ALJ's decision)); Cordell v. Barnhart, No. 1:05-cv-281, 2006 WL 5435534, at *3-5 (W.D.N.C. May 19, 2006) (same). Since substantial evidence supports the ALJ's conclusions, any failure to discuss this testimony is harmless.

Although the medical records establish that Plaintiff experienced symptoms to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923 (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate

determination that Plaintiff was not disabled.

## IV. <u>RECOMMENDATIONS</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #10) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #12) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Diamond</u>, 416 F.3d at 316; <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Wells</u>, 109 F.3d at 201; <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; <u>and to the Honorable Frank D. Whitney.</u>

**SO RECOMMENDED AND ORDERED**.

Signed: July 24, 2014

David S. Cayer
United States Magistrate Judge